# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47157-4-II |
| Respondent, | |
| v. | |
| NGA (NMI) NGOEUNG aka: Shamrock, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — In 1995, a jury found Nga Ngoeung guilty of two counts of aggravated first degree murder, two counts of first degree assault and one count of taking a motor vehicle without the owner's permission when he was 17 years old. The superior court imposed two mandatory life without parole sentences for the murder convictions and 267 additional months for the other convictions. In 2015, after a resentencing hearing required under *Miller*,[1] the resentencing court imposed two minimum consecutive life without parole sentences for the murder convictions and upheld his 267-month sentence for the other convictions, all running consecutively. Nga Ngoeung appeals his resentence.[2]

After we issued our opinion in *State v. Bassett*, 198 Wn. App. 714, 394 P.3d 430 (2017), *aff'd*, ___ Wn.2d ___, 428 P.3d 343 (2018), we requested supplemental briefing. In Nga Ngoeung's supplemental briefing, he identified the remaining issues. He argues that (1) we need

---

[1] *Miller v. Alabama*, 567 U.S. 460, 487, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

[2] We stayed review of this matter pending a decision and mandate in *State v. Bassett*, ____ Wn.2d ___, 428 P.3d 343 (2018). On October 18, 2018, our Supreme Court entered a decision in *Bassett* and the mandate was issued on November 15, 2018, therefore the order staying the appeal in this matter is hereby lifted.

to address the proper procedure for review of his sentence, (2) his life sentences without parole should be reversed as unconstitutional under *Bassett* and remanded for resentencing, and (3) he is entitled to new counsel at his resentencing hearing.

We hold that the proper procedure for review of Nga Ngoeung's resentencing under *Miller* is a personal restraint petition (PRP). Under *Bassett*, Nga Ngoeung's life sentences without parole are reversed. Finally, Nga Ngoeung is not entitled to the appointment of different counsel at resentencing. We remand for resentencing in accordance with this opinion.

FACTS

I. BACKGROUND FACTS AND PROCEDURE

In August 1994, four high schoolers drove down a Tacoma street throwing eggs. *Insyxiengmay v. Morgan*, 403 F.3d 657, 661 (9th Cir. 2005).[3] Some of the eggs hit a house that turned out to be a hangout for a local gang. *Insyxiengmay*, 403 F.3d at 661. Nga Ngoeung, then age 17,[4] Oloth Insyxiengmay, then age 15, and Soutthanom Misaengsay, then age 13, were associated with the gang and were outside the house during the egging. *Insyxiengmay*, 403 F.3d at 661. Believing the attack was gang related, Oloth Insyxiengmay entered the house and took the owner's rifle. *Insyxiengmay*, 403 F.3d at 661. The three boys got in a car and with Nga Ngoeung driving, followed the other car. *Insyxiengmay*, 403 F.3d at 661. Oloth Insyxiengmay put the rifle

---

[3] Both parties stipulate that the facts of Nga Ngoeung's crime are set out in this court's unpublished opinion in a joint appeal in *State v. Insyxiengmay*, noted at 93 Wn. App. 1030 (1998). Nga Ngoeung also cites to the Ninth Circuit's recitation of the facts in *Insyxiengmay*.

[4] This incident occurred 51 days before Nga Ngoeung's 18th birthday.

out the window and shot at the other boys' car. *Insyxiengmay*, 403 F.3d at 661. Two of the boys in the other car were killed. *Insyxiengmay*, 403 F.3d at 661.

Oloth Insyxiengmay, Nga Ngoeung, and Soutthanom Misaengsay then returned to the house and Oloth Insyxiengmay handed the rifle to someone inside the house, told her to get rid of it, and said, "'We shot them up. We shot them up. They threw eggs at us, the Rickets. We shot them up.'" *Insyxiengmay*, 403 F.3d at 661. Nga Ngoeung was arrested on September 3, 1994 and confessed to police that he drove the car during the shootings. *Insyxiengmay*, 403 F.3d at 661.

In 1995, Nga Ngoeung was tried as an adult and a jury convicted him of two counts of aggravated first degree murder, two counts of first degree assault, and one count of taking a motor vehicle without the owner's permission. The trial court sentenced Nga Ngoeung to two consecutive terms of the then-mandatory sentence of life without possibility of parole for the two aggravated first degree murder convictions. Former RCW 10.95.030(1) (1993). The trial court further sentenced him to 136 months and 123 months for two first degree assault convictions and 8 months for the taking a motor vehicle conviction, all to be served consecutively following his aggravated murder sentences.

## II. RESENTENCING HEARING

In 2012, in *Miller*, the United States Supreme Court declared mandatory life sentences without parole for those under 18 years old unconstitutional. 567 U.S. at 487. In response, in June 2014, the Washington legislature implemented the "*Miller*-fix" and amended the statutory scheme under which Nga Ngoeung was originally sentenced. Ch. 10.95 RCW. In January 2015, because Nga Ngoeung had received two unconstitutional mandatory life without possibility of parole sentences, he was resentenced.

A. CONSECUTIVE SENTENCING

The resentencing court first addressed whether all of Nga Ngoeung's sentences could run consecutively. After argument by both counsel,[5] the court found that Nga Ngoeung's convictions must run consecutively. And at a minimum, Nga Ngoeung must serve 72 years, which included two minimum sentences of 25 years for each aggravated murder conviction plus the two assault convictions. The resentencing court added that subsuming the sentence for one aggravated murder into the other by running them concurrently would be to "give a free pass to however many other additional murders . . . or other serious violent offenses the offender commits." Remand for Sentencing Review (RSR) (Jan. 23, 2015) at 31-32.

B. MITIGATION

The resentencing court then asked the parties to discuss the minimum sentence Nga Ngoeung should serve in light of the mitigation evidence. Defense counsel clarified that the resentencing court had concluded that, at a minimum, Nga Ngoeung would not be eligible for review for parole for 72 years. The resentencing court confirmed that would be the case, with credit for time served, unless it sentenced Nga Ngoeung to life without parole. In response, defense counsel stated that in light of the court's ruling that the minimum sentence was 72 years, in effect a life sentence, he would rest on the briefing and mitigation package presented to the resentencing court.

---

[5] Nga Ngoeung had two defense attorneys: one addressed consecutive sentencing and the other addressed his mitigation evidence. Nga Ngoeung claims only his mitigation attorney was ineffective.

Nga Ngoeung offered a mitigation packet with over 100 pages of supporting documentation as well as a sentencing memorandum. The memorandum asserted that the resentencing court could not presume life without parole was an appropriate sentence and requested a minimum term of 25 years.

Included in the mitigation evidence was a report by Julie Armijo, a mitigation specialist who interviewed Nga Ngoeung and his family, summarizing the circumstances in Nga Ngoeung's life, noting in part that his family members were immigrants. A psychological evaluation in 1990 concluded that Nga Ngoeung was mildly mentally retarded. Another evaluation one year later concluded that Nga Ngoeung was emotionally disabled and had adjustment disorder, mild depression, and possible posttraumatic stress disorder. A third evaluation in 1994 concluded that he was extremely uneducated, but not cognitively handicapped, and may have an underlying personality disorder.

The mitigation packet also included a 2014 sentencing mental health report from Dr. Terry Lee, who wrote that she had reviewed Nga Ngoeung's school records, court and Department of Corrections' records, and previous psychological evaluations. Dr. Lee stated that Nga Ngoeung's cognitive and psychosocial functioning at the time of his offense was different than that of an adult and was delayed relative to other 17-year-olds. The mitigation packet also included Nga Ngoeung's statement to police following his arrest, in which he stated he was afraid of the members of his gang.

Fifteen family members, three fellow inmates and six family friends also submitted letters in support of Nga Ngoeung's resentencing. A 2003 prison psychiatric report stated Nga Ngoeung spent his time reading and listening to the radio, had a blunt affect, and seemed depressed. A 2014

psychiatric evaluation of Nga Ngoeung at age 37 states that he continued to have anxiety states, social phobia, and depression. The evaluation states that Nga Ngoeung was not able to complete his general education development certificate in prison and had worked for only three months during his sentence.

The State argued that Nga Ngoeung's age at the time of the crime, 51 days short of 18 years old, meant his brain was developed such that his age should not diminish his culpability. The State further argued that the single act of Nga Ngoeung's father hitting him with a cord was an incident of parental discipline and there is no other evidence in the mitigation packet of abuse or neglect. With respect to Nga Ngoeung's family environment, the State argued that individuals grow up in worse situations and do not engage in shootings. The State concluded that there were not any mitigating circumstances that warrant less than life without parole and asked that the resentencing court uphold Nga Ngoeung's life without parole sentence for each murder charge.

The resentencing court then gave defense counsel the opportunity to respond. Defense counsel stated,

> Your Honor, I do wish to respond. However, at this point, I think given the earlier ruling, I think anything I say is essentially a nullity and that this to me represents a sentence that will -- the earliest potential release would put my client around the mid 80s or 90 years old. So at this point I rest on what we have already provided.

RSR (Jan. 23, 2015) at 49. Defense counsel added that given that Nga Ngoeung believed he would spend his life in prison, he conformed his behavior to that reality for survival and that with the hope of resentencing, he could correct his behavior to better himself. Defense counsel did not refute that Nga Ngoeung's prison history included 34 infractions.

C. SENTENCE[6]

The resentencing court stated it reviewed the entirety of the mitigation packet and focused its review on the psychiatric reports, letters from friends and family, and the substantive information contained in Armijo's mitigation report. The resentencing court imposed two consecutive life without parole sentences for the aggravated first degree murder convictions. The resentencing court also determined that the terms of 136 months for one first degree assault conviction, 123 months on the second first degree assault conviction, and 8 months for the taking a motor vehicle conviction from Nga Ngoeung's original sentence, all running consecutively for a total of over 22 years, would remain in effect. Nga Ngoeung appeals this sentence.

ANALYSIS

I. PERSONAL RESTRAINT PETITION (PRP) OR DIRECT REVIEW

The State argues that Nga Ngoeung should have sought review through a PRP. But the State concedes that Nga Ngoeung does not have to meet a heightened PRP standard of review because he has had no prior opportunity for judicial review of his resentencing claims on appeal. It further argues that Nga Ngoeung is required to, but fails to, meet the baseline PRP showing that he is restrained under RAP 16.4(b) and that his restraint is unlawful under RAP 16.4(c). We agree with the State that a PRP is the proper procedure for review and that the heightened PRP standard of review does not apply. But we disagree with the State, as discussed below, that Nga Ngoeung's restraint is lawful.

---

[6] The resentencing court's written findings and conclusions, if any, were not designated in our record.

The procedural issue is controlled by our decision in *Bassett*, 198 Wn. App. at 721. Accordingly, although Nga Noeung filed a direct appeal, we will disregard the procedural defect and treat his appeal as a PRP.

Because Nga Noeung had no prior opportunity for judicial review, he must show that he is restrained under RAP 16.4(b) and that the restraint is unlawful under RAP 16.4(c). *Bassett*, 198 Wn. App. at 722 (citing *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 299, 88 P.3d 390 (2004)). Thus, we consider whether his restraint is unlawful. *See Isadore*, 151 Wn.2d at 299. Deciding whether Nga Ngoeung is unlawfully restrained requires we review his claim on the merits.

## II. UNLAWFUL RESTRAINT/UNCONSTITUTIONAL SENTENCE

Nga Ngoeung argues that his restraint is unlawful and that his life sentences must be reversed and remanded for resentencing. Our Supreme Court agrees with Nga Ngoeung.

In *Bassett*, our Supreme Court noted that states are rapidly abandoning juvenile life without parole sentences, children are less criminally culpable than adults, and the characteristics of youth do not support the penological goals of a life without parole sentence. Our Supreme Court held that sentencing juvenile offenders to life without parole or early release constitutes cruel punishment and, therefore, RCW 10.95.030(3)(a)(ii)[7] is unconstitutional, insofar as it allows such a sentence, under article I, section 14 of the Washington Constitution. *Bassett*, 428 P.3d at 354.

---

[7] In 2014, the legislature enacted RCW 10.95.035(1), requiring that persons sentenced "prior to June 1, 2014 . . . to a term of life without the possibility of parole for an offense committed prior to their eighteenth birthday, shall be returned to the sentencing court . . . for sentencing consistent with RCW 10.95.030." LAWS OF 2014, ch. 130, § 11. Thus, we cite to the current version of RCW 10.95.030 unless otherwise noted.

In sum, the *Bassett* court affirmed our decision to reverse Bassett's life without parole sentences and to remand to the trial court for resentencing. On remand, the trial court may not impose a minimum term of life, as it would result in a life without parole sentence. *Bassett*, 428 P.3d at 355. Accordingly, Nga Ngoeung's life without parole sentences are unconstitutional and his restraint is unlawful. We reverse his sentences and remand for resentencing in accordance with this opinion.

### III. NEW COUNSEL

Nga Ngoeung argues that he received ineffective assistance of counsel at the resentencing hearing, and thus he requests different counsel be appointed for his resentencing.[8] Nga Ngoeung's arguments fail.

### A. STANDARD OF REVIEW AND RULES OF LAW

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the United States Supreme Court set forth a two-prong inquiry for reversal of a criminal conviction based on ineffective assistance of counsel. 466 U.S. at 687. Under the *Strickland* test, the defendant bears the burden to show (1) counsel's performance was deficient and (2) the attorney's deficient performance prejudiced the defense. 466 U.S. at 687. A defendant is prejudiced by deficient assistance if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Failure to make the

---

[8] He also briefly discusses and acknowledges that the appearance of fairness doctrine probably does not require a new sentencing judge. We agree.

required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700.

## B. PREJUDICE

Nga Ngoeung argues that his counsel was "prejudicially ineffective" for failing to present evidence, failing to make argument, and failing to raise issues. Appellant's Suppl. Br. at 15. In his opening brief, Nga Ngoeung's argument appears to be that if his counsel had orally argued about his mitigation evidence and how the court should interpret the *Miller* factors, the resentencing court would have applied the correct standards and, thus, could have concluded life without parole was not an appropriate sentence.

The State argues that Nga Ngoeung cannot show prejudice because the record demonstrates that the resentencing court properly considered the *Miller* factors and the mitigation evidence presented, so no additional oral presentation would have affected the outcome. We agree with the State.

Nga Ngoeung primarily argues that because defense counsel did not make an oral presentation before or after the State's presentation about the *Miller* analysis, the State was the only party describing the *Miller* factors to the court; the court then adopted "all of the [State's] mistaken claims and failed to properly consider *any* of the factors as required by *Miller*." Appellant's Opening Br. at 41. But Nga Ngoeung's argument that his counsel's failure to make oral argument caused the resentencing court to fail to properly consider the *Miller* factors and his mitigation evidence is unpersuasive.

The resentencing court stated that it considered all of the over 100 pages of mitigation evidence submitted by Nga Ngoeung. This evidence included information about Nga Ngoeung's

age, developmental background and deficits, lack of education, his abusive and neglectful family dynamics, the nature of the crime and his role, his gang involvement and the gang culture in his neighborhood, how his family perceived he had matured since his crime, a psychological evaluation about how Nga Ngoeung's circumstances all rendered him less culpable than an adult and more susceptible to impulsivity and poor decision making, and letters in support of Nga Ngoeung. This evidence addressed the *Miller* factors.

Further, we note that defense counsel made at least some argument explaining that Nga Ngoeung's prison record merely conformed to his survival needs and his belief that he would spend his life in prison. And finally, counter to Nga Ngoeung's arguments that his counsel's failures to interject throughout the hearing caused the court to follow the State's arguments, the record shows that the resentencing court repeatedly disagreed with the State's assessments of certain *Miller* factors and relied on Nga Ngoeung's mitigation evidence.

Based on review of the entire record and in light of the resentencing court's consideration of the mitigation evidence presented, Nga Ngoeung has not established that defense counsel's decision to rest on his submitted materials resulted in prejudice. Because Nga Ngoeung's counsel presented an extensive mitigation packet and presented some argument, we hold that Nga Ngoeung's ineffective assistance of counsel claim fails. Thus, we hold that Nga Ngoeung fails to demonstrate that there is a reasonable probability that but for his counsel's decision not to give oral argument, the resentencing court would not have imposed life without parole sentences. Nga

Ngoeung's ineffective assistance of counsel claim thus fails, and accordingly, he is not entitled to new counsel on resentencing.[9]

We reverse his life without parole sentences and remand for resentencing in accordance with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, P.J.

LEE, J.

---

[9] Although Nga Ngoeung's counsel's failure to make argument may not be deficient, it is usually the better practice to present oral argument summarizing voluminous evidence for the court's benefit.